<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re:                                        :
                                              :
**EDWARD M. COVELLI, JR. and RITA**           :        Chapter 7
**B. COVELLI**,                               :
                                              :        Case No. 15-36090 (CGM)
                                              :
                        Debtors.              :
------------------------------------------------------- x

**MEMORANDUM DECISION GRANTING DEBTORS' MOTION TO REOPEN AND
FOR SANCTIONS AND DENYING WILLIAM CLEMENT'S MOTION FOR AN
ORDER ON THE PETITION DATE**

<u>A P P E A R A N C E S</u> :

Edward M. Covelli, Jr and
Rita B. Covelli
*Pro Se Debtors*

Corbally Gartland Rappleyea LLP
35 Market Street
Poughkeepsie, NY 12601
*Attorneys for William Clement*
By:            Patrick T. Gartland
               Karen E. Hagstrom

**CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE**

       Before the Court are the motions of Edward M. Covelli, Jr. and Rita B. Covelli

("Debtors") to reopen their chapter 7 bankruptcy case and to impose sanctions on creditor

William Clement ("Clement") for his alleged violation of the discharge injunction.  Amended

Mot. to Reopen and for Sanctions, Feb. 23, 2016, ECF No. 36 ("Mot. for Sanctions").[1]  Also

before this Court is Clement's motion for an order declaring the Debtors' chapter 7 petition date

---

[1] Unless otherwise indicated, all citations to litigation documents can be found on the docket of case number 15-36090—the Debtors' chapter 7 bankruptcy case.

to be the earlier petition date from Debtors' chapter 13 case.  Mot. for Order Determining

Petition Date, Mar. 22, 2016, ECF No. 39 ("Mot. for Petition Date").  As explained below, the

Court grants the Debtors' motions to reopen the case and for sanctions and denies Clement's

motion to use the chapter 13 petition date as the petition date for purposes of the Debtors'

chapter 7 discharge.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C.

§ 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), as it is a matter

concerning the administration of the estate.

## Background

Debtors filed their first petition for relief under chapter 13 of the Bankruptcy Code on

December 2, 2014.  *See* Vol. Petition, *In re Covelli*, No. 14-37379 (Bankr. S.D.N.Y. Dec. 2,

2014), ECF No. 1.[2]  Debtors' chapter 13 petition indicated Debtors owned and lived in certain

real property located at 231 Ressique Road, Stormville, New York (the "Property").  *See id.* at 9.

The chapter 13 petition also listed the Property as encumbered by a first mortgage, held by

Clement.  *Id.* at 15.

Clement, a contractor who builds homes, holds a note secured by a mortgage on the

Property.  Mot. for Order Terminating Stay ¶¶ 2–5, No. 14-37379, ECF No. 30 ("Chapter 13

Mot. Lift Stay").  On November 6, 2013, prior to Debtors' chapter 13 filing, Clement

commenced a foreclosure action in New York state court.  *Id.* ¶ 7.  On October 24, 2014,

Clement obtained a judgment of foreclosure and sale on the Property.  *Id.* ¶ 8; Mot. for Petition

Date 2.  Clement scheduled a foreclosure sale for December 27, 2014, which was stayed by the

---

[2] All further citations to case No. 14-37379 will omit the reference to the case name, *In re Covelli*.

filing of Debtors' chapter 13 petition.  Amended Compl. ¶¶ 7–8, *Clement v. Covelli*, Adv. No.

15-09024 (Bankr. S.D.N.Y. Sept. 14, 2015), ECF No. 3[3] ("Amended Compl.").

On March 12, 2015, Clement filed a secured proof of claim in the Debtors' chapter 13

case in an amount of $448,189.56, stating the claim was secured by a note and mortgage on the

Property.  *See* Proof of Claim No. 14-1, No. 14-37379.  On the same day, Clement filed a motion

for relief from the automatic stay.  *See* Chapter 13 Mot. Lift Stay.  The Court granted Clement

relief from the stay in the Debtors' chapter 13 case by order entered on April 6, 2015.  Order,

No. 14-37379, ECF No. 35.  Roughly two months later, on June 8, 2015, Debtors voluntarily

dismissed their chapter 13 case prior to receiving a discharge.  *See* Mot. to Dismiss, No. 14-

37379, ECF No. 46; Order on Mot. to Dismiss, No. 14-37379, ECF No. 48.

On June 15, 2015, only seven days later and before the chapter 13 case had been closed,

Debtors filed a petition for relief under chapter 7 of the Bankruptcy Code.  *See* Vol. Petition,

June 15, 2015, ECF No. 1.  On June 16, 2015, Clement filed a motion to dismiss Debtors'

chapter 7 case, or in the alternative, for relief from the automatic stay.  *See* Mot. to Dismiss or

for Relief, June 15, 2015, ECF No. 7.  In support of the motion to dismiss, Clement argued that

Debtors were ineligible to be chapter 7 debtors under 11 U.S.C. § 109(g)(2).  *Id.* ¶¶ 10–11.  In

the alternative, Clement sought relief from the stay to proceed with the foreclosure sale of the

Property scheduled for June 17, 2015.  *Id.* ¶¶ 12, 13.

At the June 30, 2015 hearing on the motion to dismiss, the parties informed the Court

they had settled the matter.  The parties agreed to lift the stay as to Clement's interest in the

Property, with prejudice, which was approved by order of this Court ("Chapter 7 Lift Stay

Order").  *See* Order, July 7, 2015, ECF No. 10.  The Court did not rule on the motion to dismiss.

---

[3] All further citations to Adv. No. 15-9024 will omit the reference to the case name, *Clement v. Covelli*.

The Debtors' chapter 7 case proceeded, and Debtors received a discharge of their debts in chapter 7 on September 30, 2015.  Order Discharging Debtor, Sept. 30, 2015, ECF No. 18.

On September 11, 2015, Clement filed an adversary proceeding against the Debtors to contest the dischargeability of the deficiency amount Debtors allegedly owed him on the note and mortgage.  *See* Amended Compl ¶¶ 2, 5, 17.  Clement argued that the deficiency on the note and mortgage was a non-dischargeable debt under 11 U.S.C. § 523(a)(6), as a debt incurred for willful and malicious injury by the Debtors to the Property.  *Id.* ¶¶ 13, 17.  Clement claimed that after this Court entered the Chapter 7 Lift Stay Order, Debtors agreed to vacate the Property by August 1, 2015.  *Id.* ¶ 12.  Clement claimed that on July 23, 2015, a neighbor of the Debtors informed him that the back door to the Property was open.  *Id.* ¶ 13.  Clement claimed that upon receiving this information he went to secure the Property.  *Id.*  Clement contended Debtors had removed appliances and fixtures from the Property that were subject to the mortgage, damaged electrical wiring, and left wiring exposed without turning the electricity off.  *Id.*  Clement claimed that the appliances and fixtures were in fact subject to the mortgage, and that he had the right to foreclose on the personal property as well.  *Id.* ¶¶ 12–14.

Clement asserted that but for the removal of the appliances and fixtures and the damage caused to the Property, the fair market value of the Property would have been $364,933.  *Id.* ¶ 17.  Clement claimed the Debtors' actions had resulted in actual damages of $93,207 and correspondingly reduced the fair market value of the property by $93,207 from $364,933 to $271,726.  *Id.* ¶¶ 15, 17.  Clement argued he was entitled to the difference between the face value of the note, $501,944, and the reduced fair market value of the Property of $271,726, resulting in a deficiency claim of $230,218.[4]  *Id.* ¶¶ 16–17.  Clement argued that the personal

---

[4] Clement asserts he purchased the Property himself at the foreclosure sale with a $100,000 credit bid.  Clement claimed there were no other bidders.  Amended Compl. ¶ 16.

debt of $230,218 was not dischargeable, as Debtors' had created the deficiency through their

willful and malicious injury to the Property. *Id.* ¶ 19.

On September 25, 2015, Debtors filed a motion to dismiss the adversary proceeding.

Mot. to Dismiss, Adv. No. 15-09024, ECF No. 6. Debtors argued Clement had not pled

sufficient facts to establish a claim for relief under § 523(a)(6). *See id.* ¶ 3. Debtors argued that

Clement could not establish an injury to the Property, that any alleged injury was inflicted by the

Debtors, or that any injury had been inflicted in a willful and malicious manner. *Id.* Debtors

argued that the personal property was not subject to the mortgage and the only alleged injury was

the wrongful removal of personal property. *Id.* ¶ 4.

At the hearing on the Debtors' motion to dismiss, the Court ruled that Clement's

amended complaint, "as written, does not plead facts to state a claim for which bankruptcy court

can grant relief under § 523(a)(6)." Tr. Nov. 3, 2015 Hrg. Mot.Dismiss 12:5–7, Adv. No. 15-

09024, ECF No. 19. The Court reasoned that a deficiency judgment on a note and mortgage is a

dischargeable contract debt, and Clement had only argued that Debtors' removal of property

subject to the mortgage had caused a deficiency in the fair market value, not that a mere contract

debt could be transformed into a tortious debt for willful and malicious injury. *Id.* at 12:22–13:4.

Even if Clement had argued the separate existence of tort damages that were not based on the

mortgage deficiency, the alleged tortious conduct had all occurred post-petition. *Id.* at 13:6–10.

A state court action to pursue damages in tort based on post-petition conduct of the Debtors in a

chapter 7 would not have been stayed by the bankruptcy proceeding. *See id.* at 13:11–18. The

Court granted Debtors' motion to dismiss the complaint. The Court gave Clement 14 days' to

replead his complaint to allege either (1) the existence of a single debt based on the note and

mortgage, and that a contract claim for a deficiency judgment could be transformed into a

tortious debt that would be rendered non-dischargeable under § 523(a)(6); or (2) the existence of a second separate debt for damages based on tortious conduct that occurred pre-petition. *See id.* at 13:19–25. Clement failed to file an amended complaint, and the adversary proceeding was closed on December 14, 2015.

Instead of filing an amended complaint, Clement filed a motion in the Debtors' chapter 7 bankruptcy case to clarify this Court's Chapter 7 Lift Stay Order. Mot. for Order to Clarify, Dec. 18, 2015, ECF No. 26. On January 14, 2016, this Court entered an order in an attempt to clarify the Chapter 7 Lift Stay Order. *See* Order Regarding Discharge of Debts, Jan. 14, 2016, ECF No. 29. The clarifying order provided "that the debt owed to Clement . . . is discharged except that any postpetition damages inflicted on the [P]roperty . . . are not discharged by the Debtors' chapter 7 case, are not included in the bankruptcy estate and are not subject to the automatic stay," with the understanding that the order did not address whether, in fact, such damages had occurred. *Id.* The clarifying order only addressed those potential postpetition damages that would not have been included in the bankruptcy estate to begin with. The clarifying order did not transform a dischargeable mortgage deficiency into a non-dischargeable debt. After the clarifying order was entered, the Debtors' chapter 7 bankruptcy case was closed on January 20, 2016.

Before the Court is Debtors' February 17, 2016 motion to reopen their chapter 7 case. The same motion also alleges that Clement violated the discharge injunction by pursuing a deficiency judgment in state court on the note and mortgage discharged by Debtors' chapter 7. Mot. for Sanctions ¶ 25. Debtors seek sanctions of $10,000 in compensatory damages and $5,000 in punitive damages. *Id.*

In response, Clement contends that the state court action does not seek a true deficiency judgment on the mortgage, only a determination of whether there were any postpetition damages inflicted on the Property.  Clement argues that "[t]he State Action uses the term 'deficiency' because New York State Court vernacular uses it to describe reductions in a house's value from any source, including market conditions and intentional damage to the house."  Reply to Amended Mot. to Reopen ¶ 4, Feb. 24, 2016, ECF No. 37.

Subsequently, Clement filed a separate motion for "clarification" regarding the Debtors' chapter 7 petition date.  In the motion, Clement seeks an order declaring the Debtors' earlier chapter 13 petition date of December 2, 2014 to be the effective petition date for purposes of the Debtors' chapter 7 discharge.  Mot. for Petition Date 6.  Clement claims that the state court seeks clarification of the petition date for purposes of determining whether the Debtors inflicted any post-petition damages on the Property.  *Id.* ¶ 9.

## Discussion

### 1.  Motion to Reopen the Chapter 7 Case

Before the Court can address the merits of Debtors' motion for sanctions and Clement's motion to determine the petition date, the Court must rule on Debtor's motion to reopen the chapter 7 bankruptcy case.  Pursuant to 11 U.S.C. § 350(b), "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  The determination to reopen the bankruptcy case is left to the discretion of the bankruptcy court.  *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir. 1996) (citations omitted).  The party seeking to reopen the case bears the burden to show cause exists.  *See In re Easley-Brooks*, 487 B.R. 400, 406 (Bankr. S.D.N.Y. 2013) (citations omitted).

Here, Debtors' move to reopen the chapter 7 case in order to impose sanctions on Clement for his violation of the discharge injunction. "A motion to reopen should be liberally granted and ought not be used to force the debtor to prove her case twice, once to reopen the case and later at the hearing on the merits." *In re Potes*, 336 B.R. 731, 732 (Bankr. E.D. Va. 2005). Further, as a general rule, *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A motion to impose sanctions for violation of the discharge injunction is an appropriate purpose to reopen a bankruptcy case. *See, e.g.*, *McKenzie-Gilyard v. HSBC Bank Nev., N.A. (In re McKenzie-Gilyard)*, 388 B.R. 474, 478 (Bankr. E.D.N.Y. 2007). Clement has not formally objected to Debtors' motion to reopen their chapter 7 bankruptcy case. As such, the Court grants the Debtors' motion to reopen the chapter 7 case.

## 2.  Motion to Clarify the Petition Date

The Court now turns to Clement's motion to clarify the petition date. Clement asks the Court to declare the "petition date" of Debtors' chapter 7 case to be the date that Debtors filed their first petition under chapter 13 of the Bankruptcy Code, which was dismissed, and not the date that Debtors filed their most recent chapter 7 petition, which was discharged. This is nonsensical and does not comport with bankruptcy law.

A bankruptcy case may be commenced voluntarily or involuntarily. *See* 11 U.S.C. §§ 301, 303. The Bankruptcy Code provides that "[a] voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301(a). This means a bankruptcy "case" is commenced by the filing of a petition under a particular chapter. Under § 301(b), the commencement of a case under a bankruptcy chapter, *i.e.*, the filing of the petition, constitutes

the order for relief under said chapter.  Thus, the petition date of Debtors' chapter 7 case, in

which they received a discharge of all their debts, controls and is June 15, 2015.

Clement argues that Debtor's chapter 7 case should somehow be treated as non-existant

based upon § 109(g)(2).  Section 109(g)(2) states that no individual may be a debtor in

bankruptcy where the individual "has been a debtor in a case pending under this title at any time

in the preceding 180 days if . . . (2) the debtor requested and obtained the voluntary dismissal of

the case following the filing of a request for relief from the automatic stay provided by section

362 . . . ."  11 U.S.C. § 109(g)(2).  The issue of a debtor's eligibility under § 109(g) only arises

when the second petition is filed within 180 days of the dismissal of the prior case, which is what

occurred here.

The application of § 109(g) is not uniform throughout the federal circuits.  *See In re*

*Richter*, 2010 Bankr. LEXIS 3628, at * 3–11 (Bankr. N.D. Iowa Oct. 22, 2010) (distinguishing

between the strict approach and cases finding an exception to a mandatory application); *In re*

*Hutchins*, 303 B.R. 503, 507–08 (Bankr. N.D. Ala. 2003) (identifying several approaches to the

application of § 109(g), including a strict interpretation, equitable interpretation, and a varying

approach hinging on the interpretation of the word "following" in the statute).

Some courts favor a strict interpretation, prohibiting the debtor from filing a bankruptcy

case within 180 days of a previous case in which a motion for relief from stay was filed.  *See,*

*e.g.*, *Andersson v. Security Fed. Sav. and Loan of Cleveland (In re Andersson)*, 209 B.R. 76, 78

(B.A.P. 6th Cir. 1997); *In re Munkwitz*, 235 B.R. 766, 768 (Bankr. E.D. Penn. 1999).  Courts

holding the application of § 109(g)(2) to be  mandatory reason that the language of the statute is

plain and unambiguous on its face.  *See Andersson*, 209 B.R. at 78.  Other courts have held that

the application of § 109(g) is within a bankruptcy court's equitable discretion.  *See, e.g.*, *Home*

*Sav. Of Am., F.A. v. Luna (In re Luna)*, 122 B.R. 575, 577 (B.A.P. 9th Cir. 1991); *In re Howard*, 311 B.R. 230, 232 (Bankr. E.D. Wisc. 2004); *In re Santana,* 110 B.R. 819, 822 (Bankr. W.D.Mich. 1990).  These courts have declined to apply § 109(g) "if the debtor acted in good faith or if applying the statute produced an absurd or unfair result."  *Grossman v. Beal (In re Beal)*, 347 B.R. 87, 91 (E.D. Wis. 2006) (citations omitted).  Some courts require there to be a causal connection between the voluntary dismissal of the previous case and the motion for relief from stay, based on the statute's requirement that the voluntary dismissal "follow" the motion for relief from stay.  *See In re Sole*, 233 B.R. 347, 350 (Bankr. E.D. Va. 1998).  Yet other courts have adopted a "pending motion" approach, and will only apply § 109(g)(2) where the prior bankruptcy case was voluntarily dismissed while a motion for relief from stay was still pending or unresolved.  *Economy Motors, Inc. v. Jones (In re Jones)*, 99 B.R. 412, 413 (Bankr. E.D. Ark. 1989); *Fulton Federal Sav. And Loan Assoc. v. Milton (In re Milton)*, 82 B.R. 637, 640 (Bankr. S.D. Ga. 1988); *In re Patton*, 49 B.R. 587, 589 (Bankr. M.D. Ga. 1985).

This Court rejects the mandatory interpretation of the statute.  A debtor is not automatically ineligible to file a bankruptcy case within 180 days of a previous voluntary dismissal that was obtained after a motion for relief from the stay was filed.  Instead, this Court takes the view that "[t]he clerk must accept the subsequent petition when it is filed, since it will not yet have been determined whether the debtor is ineligible under section 109(g)."  2 Collier on Bankruptcy ¶ 109.08 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also In re Wen Hua Xu*, 386 B.R. 451, 455 (Bankr. S.D.N.Y. 2008) (citing *In re Pike*, 258 B.R. 876, 882 (Bankr. S.D. Ohio 2001); *Colonial Auto Center v. Tomlin (In re Tomlin)*, 105 F.3d 933, 942 (4th Cir. 1997)).  This conclusion is bolstered by *Adams v. Zarnel (In re Zarnel)*, in which the Second Circuit held that the filing of the petition commences the bankruptcy case regardless of whether

the debtor is technically eligible for relief under a particular chapter. *See Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 166 (2d Cir. 2010). The debtor's eligibility under § 109 is a determination of whether the debtor is eligible for the relief afforded by the Bankruptcy Code and not whether the Debtor was eligible to file a petition in the first place. *Id.*

Pursuant to 28 U.S.C. § 1334(a), "the district court shall have original and exclusive jurisdiction of all cases under title 11." "Although § 109 is not 'jurisdictional,' the analysis and determination of eligibility for bankruptcy relief is the sole and exclusive responsibility of the bankruptcy court." *In re First Assured Warranty Corp.*, 383 B.R. 502, 518 (Bankr. D. Colo. 2007) (citing *In re Miracle Church of God in Christ*, 119 B.R. 308, 309 (Bankr. M.D. Fla. 1990); *Hedquist v. Fokkena (In re Hedquist)*, 342 B.R. 295, 298–99 (B.A.P. 8th Cir. 2006)). Thus, only this Court has the power to make a determination on Debtors' eligibility under § 109(g) and Clement chose to forego this Court's consideration of the issue.

While the Debtor's chapter 7 case was open and before the discharge was entered, Clement moved to dismiss Debtors' chapter 7 bankruptcy case on the grounds that Debtors were ineligible for bankruptcy under § 109(g). Instead of allowing the Court to rule on the motion, the parties settled the motion by agreeing to lift the stay. This Court never ruled on the Debtors' eligibility under § 109(g). Instead, Debtors' chapter 7 case proceeded, and Debtors received a chapter 7 discharge. Clement cannot now argue that Debtor was not eligible to receive the discharge under chapter 7. That time has passed. Res judicata precludes Clement from relitigating this issue even though the motion to dismiss was never ruled upon by this Court. *See EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624–26 (2d Cir. 2007) ("Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised*

in that action.") (emphasis added) (internal quotations and citations omitted) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)); *see also Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 528–31 (9th Cir.1998) (holding that a bankruptcy court's allowance of an uncontested proof of claim, even without a separate order, is a final judgment for res judicata purposes). "Moreover, doubts about an order's finality are even less compelling where, as here, the debtor has received its discharge and the bankruptcy proceeding is closed. By then any lingering doubts about finality would surely have been assuaged." *EDP Med.*, 480 F.3d at 625 (internal quotation omitted). Regardless of what the Court could have ruled, Debtors filed a chapter 7 petition and received a chapter 7 discharge. As will be explained, a bankruptcy discharge is specific to the case and chapter in which it was received.

Upon the filing of a bankruptcy petition, the automatic stay goes into effect and the bankruptcy estate is created. *See* 11 U.S.C. §§ 362(a), 541(a). The automatic stay prevents creditors from enforcing any prepetition judgment or taking any action to collect or recover a prepetition claim against the debtor. 11 U.S.C. § 362(a)(2), (6).

> The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. This jurisdiction is exclusive within the field defined by the law, and is so far *in rem* that the estate is regarded as *in custodia legis* from the filing of the petition.

*Straton v. New*, 283 U.S. 318, 321 (1931) (citing *Acme Harvester Co. v. Beekman Lumber Co.*, 222 U.S. 300 (1911)).

Where the debtor receives a discharge, the automatic stay terminates and the discharge injunction permanently takes its place. *Green v. Welsh*, 956 F.2d 30, 32 (2d Cir. 1992); *In re Fucilo*, 2002 WL 1008935, at *5 (Bankr. S.D.N.Y. Jan. 24, 2002) (citations omitted). The Bankruptcy Code provides that a discharge "operates as an injunction against the commencement

or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ."  11 U.S.C. § 524(a)(2).  The discharge injunction furthers one of the basic principles of bankruptcy—to provide the debtor with a fresh start.  *McKenzie-Gilyard v. HSBC Bank Nevada (In re McKenzie-Gilyard)*, 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007) (footnote omitted).

Unless a debt is excepted from discharge under § 523, a discharge in chapter 7 "discharges the debtor from all debts that arose before the date of the order for relief under [chapter 7] . . . ."  11 U.S.C. § 727(b).  A discharge "historically had a dual meaning; it referred to both release of debts and release of the debtor from prison. Indeed, the earliest English statutes governing bankruptcy and insolvency authorized discharges of persons, not debts."  *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 364 (2006).  The Bankruptcy Court's jurisdiction is primarily *in rem* jurisdiction; "adjudications of bankruptcy and orders of discharge being, as this court clearly has treated them, in every essential particular decrees in equity determining a *status*."  *Local Loan Co. v. Hunt*, 292 U.S. 234, 241 (1934) (citing *Hanover National Bank v. Moyses*, 186 U.S. 181, 192 (1902); *Commercial Bank of Manchester v. Buckner*, 61 U.S. (20 How.) 108, 118, 119 (1858)); *see also Straton v. New*, 283 U.S. 318, 321 (1931) (citations omitted).  "The discharge of a debt by a bankruptcy court is similarly an in rem proceeding."  *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004).  "The discharge order releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt."  *Id.* (citations omitted).

The effect of a chapter 7 discharge is to void "any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . ." 11 U.S.C. § 524(a)(1). A debt is defined by the Bankruptcy Code to mean "liability on a claim." 11 U.S.C. § 101(12). A claim is defined by the Bankruptcy Code to mean a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5). Thus, a chapter 7 discharge voids all of the debtor's personal liability for claims that arose prior to the filing of the chapter 7 petition.

Clement's desire to use the earlier chapter 13 petition date as the effective petition date of the Debtors' chapter 7 case is precluded by the statute. Each bankruptcy case is commenced by the filing of a chapter-specific petition. *See* 11 U.S.C. § 301. The commencement of a case constitutes the order for relief, and so the date of the order for relief is the date of the filing of the petition. *See* 11 U.S.C. § 301; *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1022 (9th Cir. 2005) (citations omitted). The order for relief is specific to the particular chapter in bankruptcy under which the case is filed.

This conclusion is confirmed by 11 U.S.C. § 348, dealing with conversion of cases from one bankruptcy chapter to another. Under § 348(a), the "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted . . . ." Even though the date of conversion constitutes a new order for relief, this "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." The date of conversion does not change the date the original petition was filed. *See* 11 U.S.C. § 348(a), (d); *see also In re Babbs*, 265 B.R. 35, 37–38 (Bankr. S.D.N.Y. 2001) (discussing the effect of converting a case to a

chapter 7). Here, Debtors' case was not converted from chapter 13 to chapter 7, which might make determining the date of filing more confusing. Rather, the chapter 13 case was dismissed and a brand new case was commenced.

It is simply not possible to declare the effective petition date of Debtors' chapter 7 case to be the petition date of Debtors' chapter 13. Each case was commenced by two separate petitions, under two separate bankruptcy chapters. Further, Debtors did not receive a discharge in their chapter 13 bankruptcy case. The only discharge Debtors received was in their chapter 7. The petition date for Debtors' chapter 7 case is the date on which Debtors' filed their chapter 7 petition. Debtors are discharged from all debts that arose prior to the filing of the chapter 7 petition, on June 15, 2015.

### 3. Motion for Violation of the Discharge Injunction And Sanctions

Debtors argue that Clement's attempts to recover a deficiency judgment in state court on the note and mortgage are a violation of the discharge injunction. In response, Clement seeks to convince this Court that "[t]he State Action uses the term 'deficiency' because New York State Court vernacular uses it to describe reductions in a house's value from any source, including market conditions and intentional damage to the house." Reply to Amended Mot. to Reopen ¶ 4, In other words, Clement would like this Court to believe that a proceeding to recover a deficiency judgment on a mortgage encompasses more than just recovery on a contract claim.

New York Real Property Actions and Proceedings Law ("RPAPL") § 1371 specifically provides for actions to recover deficiency judgments on real property. Under New York law,

> if a mortgage holder wishes to obtain a deficiency judgment in connection with a mortgage foreclosure proceeding in New York State, it must make a motion for an order confirming the foreclosure sale and request the entry of a deficiency judgment within ninety days after the delivery of the foreclosure sale deed to the purchaser.

*In re Tyler*, 166 B.R. 21, 25 (Bankr. W.D.N.Y. 1994); RPAPL § 1371.  The process of obtaining

a deficiency judgment in New York was intended to be part of the foreclosure action.  *See*

*Sanders v. Palmer*, 499 N.E.2d 1242, 1244 (N.Y. 1986).  The deficiency judgment is a

calculation of the difference between the fair market value based on the foreclosure sale price

and the amount owing on the judgment.  *See* RPAPL § 1371.  Any deficiency judgment on a pre-

petition debt is unenforceable against a debtor in bankruptcy, other than as an unsecured claim.

*See, e.g. In re Tyler*, 166 B.R. at 25.  A motion for a deficiency judgment is not a tort action for

damages—it is part of a foreclosure action and is a determination of liability based on a contract

and the depressed fair market value of property securing that contract.  *See Sanders*, 68 N.E.2d at

1243–45.  The effect of a discharge is to void "any judgment at any time obtained, to the extent

that such judgment is a determination of the personal liability of the debtor with respect to any

debt discharged under section 727 . . . ."  11 U.S.C. § 524(a)(1).  A motion for deficiency

judgment is precisely what is enjoined by the discharge injunction, **as this Court has repeatedly

made clear**.

Here, Clement's motion to enter a deficiency judgment in the state court action is made

pursuant to the very same RPAPL § 1371.  Mot. for Sanctions, Ex. A at ¶ 8.  Further, Clement

brazenly and in clear disregard of this Court's repeated decisions to the contrary, misleadingly

argues that despite Debtors' chapter 7 discharge,

> [o]n January 14, 2016[,] the plaintiff obtained an order from the Hon. Cecilia [sic]
> G. Morris (Chief US Bankruptcy Judge for the Southern District of New York)
> indicating that despite the aforesaid discharge, the Plaintiff was not barred from
> seeking a deficiency judgment against the Defendants for the diminution in
> value of the property caused by the actions of the Defendants, and that the
> Plaintiff was only barred from seeking a deficiency judgment due to normal
> market value fluctuations

*Id.* ¶ 9.  This Court has said no such thing, nor issued any decision or order to this effect.  This Court gave Clement leave to seek recompense in tort for any potential postpetition damages, separate and apart from the deficiency judgment on the mortgage, that may or may not have been inflicted on the Property.  Any deficiency on the mortgage is a personal debt that was discharged by Debtors' chapter 7 bankruptcy discharge.  Clement seeks a deficiency judgment on the grounds that the fair market value of the Property was less than the amount Clement claimed was owed to him under the note and mortgage due to the alleged actions of the Debtors that caused damage to the Property.  The determination of fair market value by the state court is still a deficiency judgment under the RPAPL § 1371 for a personal obligation on a contract.  Debtors' personal liability on the note and mortgage were discharged by Debtors' chapter 7 bankruptcy case.  Clement's motion for an unenforceable deficiency judgment on the note and mortgage are a clear violation of the discharge injunction.

A violation of the discharge injunction is punishable by civil contempt.  *See Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 187 (2d Cir. 1990).  It has long been established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)) (internal quotation marks omitted).  The power to enforce is incident to the court's ability to meaningfully decide the case or controversy before it—without the enforcement power, the court's orders would be toothless.  *See Sigety v. Abrams*, 632 F.2d 969, 976 (2d Cir. 1980) (quotations omitted); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (quoting *United States v. Hudson,* 11 U.S. 32, 34 (1812)) (citations omitted).  The Bankruptcy Court also shares this inherent enforcement authority.  *See Maritime Asbestosis Legal Clinic*, 920 F.2d at 187; *In re Chief*

*Executive Officers Clubs, Inc.*, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007) (citations omitted).

Additionally, 11 U.S.C. § 105(a) authorizes the Bankruptcy Court to "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title," and further

acknowledges the court's ability to "take[] any action or mak[e] any determination necessary or

appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

To hold a party in contempt, the moving party must show clear and convincing evidence

of noncompliance with the court's clear and unambiguous order, and that the lack of compliance

is not in spite of the defending party's reasonably diligent efforts to comply. *See Powell v.*

*Ward*, 643 F.2d 924, 931 (2d Cir. 1981). To hold a creditor in contempt for its violation of the

discharge injunction, the court must find that the creditor had actual or constructive knowledge

of the discharge injunction and that the creditor did not comply with the order. *See In re*

*Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009) (citations omitted); *In re Haemmerle*, 529

B.R. 17, 26 (Bankr. E.D.N.Y. 2015) (citations omitted); *Nicholas v. Oren (In re Nicholas)*, 457

B.R. 202, 225 (Bankr. E.D.N.Y. 2011) (citations omitted).

Sanctions for civil contempt may "serve either to coerce the contemnor into future

compliance with the court's order or to compensate the complainant for losses resulting from the

contemnor's past noncompliance." *New York State Nat. Org. for Women v. Terry*, 886 F.2d

1339, 1352 (2d Cir. 1989) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258,

303–04 (1947)). Where damages awarded serve a compensatory purpose, compensation should

be for the actual damages incurred, and may include "attorneys' fees; litigation costs; travel

expenses; other actual losses, such as wages or business income; and possibly emotional distress

damages." *In re Haemmerle*, 529 B.R. at 26 (citations omitted); *Nicholas*, 457 B.R. at 224.

Some courts have held that to award attorneys' fees, "the plaintiff must establish 'that the

defendant acted in bad faith or in a vexatious or oppressive manner.'" *In re Nicholas*, 457 B.R. at

224 (quoting *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr.

S.D.N.Y. 2007)); (citing *In re Watkins,* 240 B.R. 668, 678 (Bankr. E.D.N.Y. 1999)).

Where coercion is intended, the Court has discretion to tailor the sanctions award to

produce the desired results. *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d

Cir. 1982) (citations omitted). In determining how best to structure a sanctions award, the Court

should take into account "(1) the character and magnitude of the harm threatened by the

continued contumacy, (2) the probable effectiveness of the sanction in bringing about

compliance, and (3) the contemnor's financial resources and the consequent seriousness of the

sanction's burden." *N.Y. State Nat. Org. for Women*, 886 F.2d at 1353 (citing *Dole Fresh Fruit

Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir.1987); *Perfect Fit*, 673 F.2d at 57; *United

Mine Workers*, 330 U.S. at 304). Ultimately, the question is whether the sanction is reasonable

in light of the facts. *Perfect Fit*, 673 F.2d at 57.

Here, Debtors seek both compensatory damages and punitive damages. The Court has

found Clement's state court action for a deficiency judgment on the mortgage constitutes a

violation of the discharge injunction. This Court also finds Clement in contempt of the discharge

injunction. Clement was aware of the existence of the discharge injunction as he filed an

adversary proceeding to render the deficiency judgment nondischargeable. Instead of complying

with the discharge injunction, Clement has repeatedly sought a way around it, both in this Court

and in state court. Debtors are entitled to their compensatory damages.

As for punitives, Clement is, and has been, aware that a state court suit seeking a

deficiency judgment is a violation of the discharge injunction. This Court issued no less than

four orders regarding the same. On July 7, 2015, this Court issued an order granting Clement

relief from the stay with regard to its *lien* interest in the Property only.  On September 30, 2015, the Court issued an order discharging the Debtors from all debts.  The discharge order speaks for itself: it bars Clement from pursuing any prepetition contract claim for damages against the Debtors.  Clement should not have needed any additional explanation for how to proceed in state court and yet, this Court provided more.  On November 23, 2015, the Court issued an order in Clement's adversary proceeding, indicating that Debtors' personal liability for any prepetition contract claim on the Property was discharged.[5]  On January 14, 2016, the Court issued an order clarifying that Debtors were discharged from any and all obligations under the note and mortgage.  This order was duplicative, unnecessary and done solely to help the parties and yet, it appears that this was not enough.

Not only did Clement choose to ignore this Court's four orders, Clement has also sought to mislead the state court as to the meaning of this Court's rulings and orders, going so far as to say that this Court's clarification order gave Clement the permission to pursue a deficiency judgment on the mortgage.  Clement knows and has known that a deficiency judgment is a dischargeable debt and the only way to enforce such a debt is by way of an adversary proceeding in bankruptcy to contest dischargeability.  This Court dismissed that adversary proceeding— there was no determination that a deficiency judgment on the mortgage would not be dischargeable.  This Court did not give Clement permission to pursue the deficiency judgment in state court.  This Court will enforce its orders with means available to it, including coercive sanctions.  Debtors are entitled to punitive damages as Clement has consistently refused to abide by this Court's decisions and orders and grossly mischaracterized this Court's rulings to the state court.

---

[5] In that same order, Clement was provided 14 days to amend his complaint seeking a declaration that any postpetition debts are nondischargeable or to otherwise address the Court's ruling.  Clement chose not to file an amended complaint.

As for punitive damages, Clement is required to withdraw or otherwise dismiss any and all proceedings for a deficiency judgment against Debtors within seven days of the date of the order accompanying this Memorandum Decision.  Clement shall be required to pay $100 per day to Debtors for every day past the seven day mark that the proceeding for a deficiency judgment continues.

### Conclusion

For the foregoing reasons, the Debtors' motion to reopen their chapter 7 bankruptcy case is granted.  The Debtors' motion to impose sanctions for violation of the discharge injunction is granted.  Clement is required to pay $100 per day to Debtors for every day following the seventh day after the Court enters this Memorandum Decision and accompanying order that the proceeding for a deficiency judgment is not withdrawn or dismissed.  Clement's motion to declare the petition date of Debtors' chapter 7 case to be the date of their chapter 13 petition is denied.  The Court will issue a separate order in conformity with this opinion.



Dated: May 13, 2016
       Poughkeepsie, New York

/s/ Cecelia G. Morris
_____
Hon. Cecelia G. Morris
Chief U.S. Bankruptcy Judge